UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CALVIN L. BRADLEY,

Plaintiff,

v.

**DECISION AND ORDER**
08-CV-61S

TOWN OF CHEEKTOWAGA, TOWN OF CHEEKTOWAGA POLICE DEPARTMENT, POLICE OFFICER SMITH (#882), POLICE OFFICER LEISING (#884), POLICE OFFICER MURCIN (#858), POLICE OFFICER KUSAK (#896) and POLICE OFFICER/SUPERVISOR GRANT (#332),

Defendants.

## I. INTRODUCTION

Plaintiff commenced this case by filing a Complaint in the Supreme Court for the State of New York, Erie County, on December 28, 2007. On January 23, 2008, the case was removed to this Court. (Docket No. 1.) Plaintiff alleges, under 42 U.S.C. § 1983, that officers from the Town of Cheektowaga Police Department used excessive force against him and deprived him of adequate medical treatment in violation of his Fourth and Fourteenth Amendment rights. Plaintiff also alleges that the Town of Cheektowaga itself is liable under § 1983, under the doctrine of respondeat superior, and through negligent supervision. Finally, Plaintiff alleges state law assault and negligence claims. Presently before this Court are Defendants' Motion for Summary Judgment (Docket No. 33). For the foregoing reasons that motion is granted in part and denied in part.

## II. BACKGROUND

### A. Facts

#### 1. Plaintiff's Version of His Arrest

Plaintiff's recollection of his arrest is as follows: In the cold, early morning hours of Februrary 12, 2007, Plaintiff left his home at 1115 Walden Avenue to buy cigarettes for his girlfriend at a nearby bar. (Bradley Tr., Docket No. 42-2, pp. 10-11.) He noticed a Town of Cheektowaga patrol car drive past him, turn around in a Wilson Farms parking lot ahead of him, and drive back toward him. (Bradley Tr., pp. 29-30.) The patrol car then approached Plaintiff and two officers jumped out of the car. (Bradley Tr., p. 31.) They called out, "Hey you," but Plaintiff did not respond and continued walking. (Bradley Tr., p. 34.) With that, police officers ran up to Plaintiff, twisted his arm behind his back, and sprayed him in the face with "Mace." (Bradley Tr., p. 34.) The officers then began beating Plaintiff, eventually wrestling him to the ground where they kicked, punched, and hit him with night sticks. (Bradley Tr., p. 44; Docket No. 34-2, Exhibit A, p. 10.)

Lying prone on the ground, face down and covering his face, Plaintiff continued to feel kicks and punches all over his body, including his shoulder and face. (Bradley Tr., pp. 49-56.) Eventually other officers arrived on the scene and joined the beating, which the plaintiff described as "brutal". (Bradley Tr., pp. 51 and 55.) Plaintiff did not struggle, resist, or attempt to flee in any way. His only movement was to raise his hands to his face in reaction to the burning sensation of the pepper spray (Bradley Tr., p. 41.)

### 2. Defendants' Version of Plaintiff's Arrest

Officers Leising and Smith had just started their midnight shift, 12 a.m. to 8 a.m., when they heard a call over the radio of a vehicle break-in near Pine Ridge and Walden in the Town of Cheektowaga. (Leising Tr., Docket No. 42-5, pp. 11,13.) Although it was Officer Murcin who directly responded to the call, Officers Smith and Leising decided to patrol the general area. (Leising Tr., pp. 14-15.) They soon encountered Plaintiff walking down Walden Avenue toward the City of Buffalo. (Leising Tr., p. 15.) Officer Leising exited the vehicle and requested that Plaintiff come to him. After ignoring the first set of requests and cursing at Officer Leising, Plaintiff began to walk in the officer's direction, placing his right hand in his pocket. (Leising Tr., p. 22.) Officer Leising interpreted this as a threatening gesture and instructed Plaintiff to remove his hand. (Leising Tr., p. 22.) Plaintiff refused, and Officer Leising grabbed Plaintiff's elbow to secure his arm. (Leising Tr., p.24.) Officer Leising then moved Plaintiff to the rear of the patrol car and removed Plaintiff's arm from his pocket and placed it on the trunk of his car. With this motion, a crack pipe rolled out of Plaintiff's hand, landing on the trunk of the patrol car. (Leising Tr., p. 24.) With this, Officer Leising informed Plaintiff he was under arrest. (Leising Tr., p. 28.) Next, Plaintiff spun around and faced the officers in a confrontational manner. (Leising Tr., p. 28.) Plaintiff refused to place his hands behind his back and the officers, fearing for their safety, took Plaintiff to the ground. (Leising Tr., p. 30.) Plaintiff continued to struggle. Officer Leising administered pepper spray, but it had no effect. (Leising Tr., p. 36.) Plaintiff continued to kick and fight while on the ground so Officer Leising placed his knee on Plaintiff's chest (Plaintiff was lying face up in this account) in an effort to secure him. (Leising Tr., p. 32.) The two officers were never able to handcuff Plaintiff. They resorted to holding his arms

and legs until assistance arrived. (Leising Tr., pp. 33-38.)

Back-up eventually did arrive. When Defendant Officer Kusak arrived, he saw Officers Smith and Leising restraining Plaintiff on the ground. (Kusak Tr. Docket No. 42-7, pp. 12-17.) Officer Leising was so exhausted from the struggle that he backed away and Officers Kusak and Smith handcuffed Plaintiff. (Kusak Tr., pp.12-17.) By the time Officer Murcin arrived, the other officers were already handcuffing Plaintiff. (Murcin Tr. Docket No. 34-3, Exhibit H, pp. 14-19.) Officer Murcin never came into physical contact with Plaintiff. (Murcin Tr., pp.14-19.) By the time Sergeant Grant arrived, Plaintiff already was in a patrol car, and he too did not come into physical contact with Plaintiff. (Grant Tr., Docket No. 34-3, Exhibit *I*, pp. 10, 25.)

**3. Post-Arrest Events and Evidence of Plaintiff's Injuries**

After Plaintiff was subdued and placed in the squad car, the officers drove him to a woman who (unbeknownst to Plaintiff) witnessed the nearby vehicle break-in to see if she recognized him. She did not. (Bradley Tr., p. 58.)[1] Officers proceeded to take Plaintiff to the Cheektowaga jail, where he contends his complaints of pain and requests for help were ignored for several hours. (Bradley Tr., p. 68.) But, the Prisoner Condition Report notes that Plaintiff first complained of pain at 5:00 a.m. (Docket No. 34-2, Exhibit B) At this time he was escorted to Erie County Medical Center ("ECMC") where he was prescribed Loritab. (Docket No. 34-3)

After his release on recognizance, Plaintiff's pain continued. He visited Sister's of Charity Hospital, where he was diagnosed with a rib and shoulder fracture. (Bradley Tr.,

[1] Mr. Bradley was not charged in connection with the vehicle break-in.

pp.73-74; Docket No. 42-3) He had “knots” on the top and back of his head. (Docket No. 42-3) He underwent surgery on his right shoulder on February 20, 2007, with follow-up therapy at ECMC. (Docket No. 42- 4; Bradley Tr. p.75.) Plaintiff asserts that his shoulder pain continues and that he is unable to perform the physical activities needed to cook, coach, and maintain his home. (Bradley Tr., pp. 78-79.)

## III. DISCUSSION

Plaintiff alleges that Defendants Leising, Smith, Kusak, and Grant used excessive force against him in violation of state law and the Fourth Amendment. He further alleges that the Town of Cheektowaga and the Town of Cheektowaga Police Department negligently supervised and failed to adequately train Defendants. Finally, he asserts § 1983 false arrest, malicious prosecution, and depravation of medical treatment claims.

Defendants argue that the forced used, if any, was reasonable and that, as a matter of law, the Town of Cheektowaga and its police department cannot be held liable under respondeat superior. Defendants also raise issues of collateral estoppel and argue that the Defendants are entitled to the protections of qualified immunity.

### A. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is warranted “if the movant shows that there is no genuine dispute as to any material fact.” A fact is “material” if it “might affect the outcome of the suit under the governing law.” Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of material fact is “genuine” if “the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).

**B. 42 U.S.C. § 1983**

Civil liability is imposed under 42 U.S.C. § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws. See 42 U.S.C. § 1983. On its own, § 1983 does not provide a source of substantive rights, but rather, a method for vindicating federal rights conferred elsewhere in the federal statutes and Constitution. See Graham v. Connor, 490 U.S. 386, 393-94,109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 145 n.3, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979)). Accordingly, as a threshold matter in reviewing claims brought pursuant to § 1983, it is necessary to precisely identify the constitutional violations alleged. See Baker, 443 U.S. at 140. Here, Plaintiff's § 1983 claims arise under the Fourth and Fourteenth Amendments.

**1. Excessive Force - Fourth Amendment**[2]

The Fourth Amendment is applicable to the States by way of the Fourteenth Amendment. Minnesota v. Dickerson, 508 U.S. 366, 372, 113 S.Ct. 2130, 2135, 124 L.Ed.2d 334 (1993). The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures." U.S. Const. amend. IV. Fourth Amendment excessive force claims are analyzed under a standard of objective reasonableness. Graham, 490 U.S. at 394. This requires the court to "'balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" Tennessee v. Garner, 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1(quoting United States v. Place, 462 U.S. 696, 703, 103 S. Ct. 2637, 2642, 77 L. Ed. 2d 110 (1983)).

An officer is justified in using force when a person whom he is trying to arrest resists, threatens, or assaults the officer. Sullivan v. Gagnier, 225 F.3d 161, 165-66 (2d Cir. 2000). But, "[t]he force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer." Id.

As stated above, Plaintiff alleges that Defendants used excessive force in effectuating his arrest. Mindful that the evidence must be considered in the light most favorable to Plaintiff, this Court finds that a reasonable jury could conclude that Defendants

---

[2] Defendants argue this claim is collaterally estopped due to the result of Plaintiff's workers compensation claim where it was determined that Plaintiff was engaged in "illegal activity." Plaintiff's excessive force claim requires different evidence and different law. Specifically, it requires this Court to determine whether the officers' actions were reasonable, not whether Plaintiff's actions were legal. Plaintiff has not had a full and fair opportunity to litigate this matter and therefore collateral estoppel is inapplicable. See Zdanok v. Glidden Co., 327 F.2d 944, 956 (1964).

used excessive force against him in violation of his Fourth Amendment rights.

The accounts of the altercation between the officers and Plaintiff differ substantially. Thus raising disputed issues of material fact. Plaintiff asserts that he was tackled to the ground, kicked and punched throughout his body, and pepper-sprayed without provocation. (Bradey Tr, pp. 45-49.)[3]

Objective medical evidence supports his account: (1) Plaintiff was diagnosed with a broken rib and shoulder at Sister's Hospital the day after the arrest; (2) Dr. Ander's operated on his shoulder on February 20, 2007, eight days after the incident. (Docket No 42-4.) In addition, Plaintiff continues to complain of pain and restricted movement. This Court finds evidence of these injuries, coupled with Plaintiff's testimony, is enough for a reasonable jury to return a verdict in Plaintiff's favor.

Moreover, despite the denials from the Defendants, Plaintiff maintains that all of the Defendant officers participated in his beating, precluding summary judgment for any one defendant.

**2. Municipal Liability: Town of Cheektowaga**[4]

A municipality may be held liable for damages under 42 U.S.C.A. § 1983 only when execution of government policy or custom inflicts the injury in question. Monell v. Dep't of Soc. Servs of City of New York, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A municipality cannot be held liable on the theory of respondeat superior or simply because it employs a tort feasor. Id. The plaintiff must set forth facts showing the existence of the

---

[3]The Court is aware that among the factors to be considered is whether, and in what manner, the arrestee is resisting arrest. Graham, 490 U.S. at 396 (citing Garner, 471 U.S. at 8-9). However, under Plaintiff's version of events, he did not resist.

[4]For the purposes of municipal liability, the Town and its police department are indistinguishable.

offending policy or custom to satisfy the requirements of Fed. R. of Civ. P. Rule 8. Id. In other words, the municipality must be the moving force behind the injury alleged. Board of County Com'rs Bryan County, Okl. v. Brown, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). Mere allegations are insufficient. Id.

"Monell's rule that a city is not liable under § 1983 unless a municipal policy causes a constitutional deprivation will not be satisfied by merely alleging that the existing training program for a class of employees, such as police officers, represents a policy for which the city is responsible." City of Canton, Ohio v. Harris, 489 U.S. 378, 389,109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). This is precisely what the plaintiff has done in this case. He has not presented any evidence of a single municipal policy or custom that caused his injuries and Plaintiff offers no evidence supporting his claim that the Town failed to train its officers adequately. As such, summary judgment for the Town of Cheektowaga is warranted.

**3. Denial of Medical Treatment - Fourteenth Amendment**[5]

A pre-trial detainee's constitutional right to be free from cruel and unusual punishment in the form of inadequate medical care derives from the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment, which is the source of the same

---

[5]Despite Plaintiff's failure to explicitly set forth the false arrest, denial of medical care, and malicious prosecution allegations in his complaint, Rule 54(c) dictates that the Court address the merits of these claims.

Rule 54(c), in pertinent part, reads: "Every other final judgment should grant relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c). Under this rule, Plaintiff should not be prejudiced by his failure to include these causes of action in his complaint. See 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1219 (3d ed. 2004) (standing for the proposition that when a party has a valid claim, he should recover despite counsel's failure to address it at the pleading stage.) This remains true only so long as the opposing party is not prejudiced by a late shift in the case. Id.

Having received the interrogatory answers on April 24, 2008, Defendants had adequate notice of Plaintiffs claims and they cannot be said to have suffered prejudice. Indeed, Defendant's addressed these claims in their Memorandum in Support of Summary Judgment.

right for convicted prisoners. Thomas v. Nassau County Corr. Ctr., 288 F. Supp. 2d 333, 337 (E.D.N.Y. 2003). Eighth Amendment analysis, however, applies to both claims. See Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996).

The Eighth Amendment, which applies to the States through the Fourteenth Amendment, "prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." Wilson v. Seiter, 501 U.S. 294, 297, 111 S.Ct. 2321, 2323, 115 L.Ed.2d 271 (1991); U.S. Const. amend. VIII. As such, prison conditions and the treatment prisoners receive while incarcerated are subject to scrutiny under the Eighth Amendment. See DeShaney v. Winnebago County Dept. of Soc. Servs., 489 U.S. 189, 199-200, 109 S.Ct. 998, 1005-1006, 103 L.Ed.2d 249 (1989). In addition, the Supreme Court has recognized that a prisoner's claim that he was intentionally denied medical treatment is cognizable under the Eighth Amendment and § 1983:

> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend evolving standards of decency in violation of the Eighth Amendment.

Estelle v. Gamble, 429 U.S. 97, 104, 106, 97 S.Ct. 285, 291, 50 L.Ed.2d 25 (1976) (quotations and citations omitted).

"A claim of cruel and unusual punishment in violation of the Eighth Amendment

has two components – one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000) (citing Hudson v. McMillian, 503 U.S. 1, 7-8, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992); Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999)). With respect to a claim of deliberate indifference to a serious medical need, a prisoner must show that he suffered from a "sufficiently serious" medical condition, see Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998), and that the defendants acted with a "sufficiently culpable state of mind," Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).

The subjective component "requires a showing that the defendant "had the necessary level of culpability, shown by actions characterized by 'wantonness' in light of the particular circumstances surrounding the challenged conduct." Sims, 230 F.3d at 21 (citations omitted). The objective component is "contextual and responsive to contemporary standards of decency." Id. (quoting Hudson, 503 U.S. at 8).

> "An official acts with the requisite deliberate indifference when he 'knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"

Brown v. Picarelli, No. 96 Civ. 1222, 2003 WL 1906180, at *6 (S.D.N.Y. Apr. 15, 2003) (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

Personal involvement in the deprivation of federal constitutional rights is the sine qua non of liability under § 1983. See Haygood v. City of New York, 64 F.Supp.2d 275, 280 (S.D.N.Y.1999). Moreover, it is well settled in this Circuit that personal involvement by defendants in cases alleging constitutional deprivations is a prerequisite to an award of damages under § 1983. See McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir.1977);

Richardson v. Coughlin, 101 F.Supp. 2d 127, 129 (W.D.N.Y. 2000) The Second Circuit construes personal involvement in this context to mean “direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates.” Black v. Coughlin, 76 F. 3d 72, 74 (2d Cir.1996); see also Wright v. Smith, 21 F.3d 496, 501 (2d Cir.1994).

Plaintiff fails both prongs of the Eighth Amendment analysis. He has not shown that his injury was sufficiently serious or that any defendant acted with deliberate indifference. The facts, even viewed in light most favorable to the plaintiff, support the contrary. Officers placed Plaintiff in custody at 12:50 a.m. (Docket No. 34-2, Exhibit B.) A few hours later, at 5:00 a.m, an ambulance was called for Plaintiff and he was taken to ECMC. Once there, he was examined and released without a diagnosis of any serious injury. With such a result, no reasonable jury could find that the Defendants “knew of and disregarded an *excessive* risk” to Plaintiff’s safety or health. Farmer, 511 U.S. at 837 (emphasis added). Moreover, Plaintiff has not identified which, if any, of the defendants was deliberately indifferent. Plaintiff merely states he was “moaning” in his jail cell and requested medical treatment, but he admits he does not know if there was a guard in the vicinity. (Bradley Tr., pp. 68-69.) Moreover, unrebutted evidence in the record establishes that the individual named defendants went back on patrol and were not in the holding cell that night. (Lesing Tr., pp. 49-50; Smith Tr., p.33; Murcin Tr., p. 21; Kusak Tr., p. 18; Grant Tr., pp. 16-17) The only colorable claim that remains is against the Town of Cheektowaga and the police department. But Plaintiff has not identified any policy or custom that resulted in the denial of adequate medical care. For those reasons, summary judgment in the defendants’ favor

is warranted on this claim.

**4. Malicious Prosecution**

To establish a claim for malicious prosecution under New York law, the plaintiff must show: (1) that the defendant initiated a prosecution against the plaintiff; (2) that the defendant lacked probable cause to believe the proceeding could succeed; (3) that the defendant acted with malice; and (4) that the prosecution was terminated in the plaintiff's favor. Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir.1997).

Considering the fourth prong, if the outcome of the plaintiff's prosecution "was the result of a compromise to which the accused agreed, or an act of mercy requested or accepted by the accused, it is not a termination in favor of the accused for purposes of a malicious prosecution claim." Murphy v. Lynn 118 F.3d 938, 949 (2d Cir.1997). Here, Plaintiff accepted a plea package to resolve the February 12, 2007 incident and an earlier charge. (Docket. No 34-2 Exhibit C; Docket. No 34-2 Exhibit D.) Thus, Plaintiff entered into a "compromise to which the accused agreed" and therefore his malicious prosecution claim must fail. Murphy, 118 F. 3d. at 949. Defendants are entitled to summary judgment.

**5. False Arrest**

Although a favorable termination of a judicial proceeding is an element of a malicious prosecution claim , it is *not* an element of a false arrest. Weyant v. Okst, 101 F. 3d. 845, 853 (2d Cir. 1996). A federal section 1983 claim for false arrest requires proof that: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to confinement; and (4) the confinement was not otherwise privileged. Posr v. Doherty, 944 F.2d 91, 96 (2d Cir.1991). But, a criminal

conviction is conclusive evidence that probable cause existed for arrest. Weyant, 101 F. 3d at 852. In turn, probable cause is an affirmative defense to a false arrest claim. Bernard v. United States, 25 F.3d 98, 102 (2d Cir.1994); Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause.").

Plaintiff's conviction precludes his false arrest claim because his confinement was supported by probable cause and thus privileged. Summary judgment in defendants' favor is warranted.

**6. Assault**

Each defendant seeks summary judgment on Plaintiff's state law assault claim. Defendants Smith, Leising, and Kusak contend that the amount of force they used was justified pursuant to New York Penal Law § 35.30.[6] Defendants Murcin and Grant contend that they used no force at all. Plaintiff, however, paints a different picture as detailed above. According to Plaintiff, each of the defendant officers kicked, punched, and beat him. A reasonable jury could credit this account and conclude that *all* Defendants used an amount of force that was unjustified. Summary judgment is therefore precluded.

**7. Negligence**

Plaintiff also alleges that his injuries were the result of the defendants' negligence. But, "when a plaintiff asserts excessive force and assault claims which are premised on defendant's allegedly intentional conduct, a negligence claim with respect to the same

---

[6]New York Penal Law § 35.30 reads: a "police officer . . . in the course of effecting an arrest or attempting to effect an arrest of a person he reasonably believes to have committed an offense, may use physical force when and to the extent he reasonably believes such force to be necessary to effect the arrest or to prevent the escape from custody, or to defend himself or a third person."

conduct will not lie.” Dinneed v. Stamka, 228 F. Supp.2d 447, 454 (S.D.N.Y. 2002); see also Oliver v. Cuttler, 968 F.Supp. 83, 92 (E.D.N.Y.1997) (“New York has adopted the view that, ‘once intentional offensive contact has been established, the actor is liable for assault and not negligence, even when the physical injuries may have been inflicted inadvertently.’”) (quoting Mazzaferro v. Albany Motel Enter, Inc., 127 A.D.2d 374, 515 N.Y.S.2d 631, 632-33 (3d Dep't 1987)). Defendants are therefore entitled to summary judgment on Plaintiff’s negligence claim.

**8. Qualified Immunity**

Officials are protected from § 1983 liability by qualified immunity if their actions (1) did not violate clearly established law or (2) were objectively reasonable. See Warren v. Keane, 196 F.3d 330, 332 (2d Cir. 1999)

Freedom from the use of excessive force is a clearly established right and was so at all times relevant to this case. See Cook v. Sheldon, 41 F.3d 73, 77, 79 (2d Cir.1994); Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991). If Plaintiff establishes that the Defendants violated his constitutional right to be free from excessive force, Defendants are not entitled to qualified immunity. Given the unresolved issues of material fact, this Court cannot conclude that it was objectively reasonable for Defendants to believe that their conduct did not violate Plaintiff's rights. Defendants are therefore not entitled to the protections of qualified immunity at this time.

## IV. CONCLUSION

For the foregoing reasons, this Court finds that Defendants are entitled to summary judgment in their favor for all causes of action, except Plaintiff's assault and Fourth Amendment excessive force claims.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion for Summary Judgment (Docket No. 33) is GRANTED in part and DENIED in part.

SO ORDERED.

Dated: July 13, 2011
Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court